

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2017 Session

## LINDA JANE PARIMORE v. GERALD DAVID PARIMORE

**Appeal from the Chancery Court for Tipton County**
**No. 28658    Martha Brasfield, Chancellor**

_____

### No. W2016-01188-COA-R3-CV

_____


Husband appeals: (1) the denial of his Rule 60.02 motion on the basis of fraud; and (2) the grant of attorney's fees to Wife.  We affirm the trial court's denial of Husband's Rule 60.02 motion but reverse the grant of attorney's fees to Wife.  We also decline the award of damages to Wife on appeal.   Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded.**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which BRANDON O. GIBSON, and KENNY ARMSTRONG, JJ., joined.

William G. Hardwick, II and Kelly Pearson, Memphis, Tennessee, for the appellant, Gerald David Parimore.

J. Barney Witherington, IV, Covington, Tennessee, for the appellee, Linda Jane Parimore.


## OPINION

### BACKGROUND

Because of the limited evidence included in the record on appeal in this case, the facts are taken largely from the pleadings and the parties' briefs.  The parties, Plaintiff/Wife Linda Parimore ("Wife") and Defendant/Husband Gerald Parimore ("Husband"), were divorced by final decree on June 30, 2011, which incorporated by reference a Marital Dissolution Agreement ("MDA") disposing of certain marital property.  The parties subsequently filed several contentious motions regarding the proper

interpretation of the language under the MDA. Because of various disputes over the terms of the MDA, on November 23, 2015, the parties attended mediation regarding the division of marital property and entered into a handwritten settlement agreement. Therein, Husband agreed to pay Wife a "lump sum payment of $80,000[.00] within [fourteen] days from the effective date of th[e settlement agreement]." In addition, Wife agreed to "transfer, deed[,] and/or relinquish all rights in the joint timeshare in favor of [Husband]." The settlement agreement also provided that an order would be entered effectuating its terms within seven days from the date of execution. Husband decided shortly after the mediation to revoke his consent to the signed agreement. As a result, Husband's then-attorney refused to sign the consent order effecting the terms of the mediated agreement.

On December 3, 2015, Wife filed a motion to enforce the mediated agreement, alleging that Husband "terminated his attorney and informed [the attorney] that [Husband] would not honor the mediation agreement." On January 6, 2016, Husband, through new counsel, filed a response, asserting, *inter alia*, that Wife may not enforce a consensual agreement by court order where the other party no longer agrees to the settlement.

At the January 7, 2016 hearing on Wife's motion to enforce the mediation agreement, Husband testified that he was coerced into signing the mediation agreement by his then-attorney and the mediator based on their statements that Husband would incur additional expenses, potentially expose himself to a contempt judgment, or potentially suffer a worse money judgment if he did not agree to settle.[1] Husband further testified that his "retirement accounts were no one's business but his own" and acknowledged that "he did not disclose the details of those accounts until shortly before mediation, and only did so because his [then-]attorney advised him that he could be held in contempt if he did not."

After the hearing, the trial court entered an order on January 11, 2016, finding that Husband was not "easily subject to coercion and would have no problem saying 'no' if confronted with an unsatisfactory proposal at mediation." The trial court further found that the settlement agreement entered into by the parties constituted a "valid contract" and ordered Husband to pay the $80,000.00 lump sum pursuant to the agreement.

On February 22, 2016, Husband filed a sworn motion for relief from judgment pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure based on fraud and misrepresentation. Therein, Husband alleged that he agreed to pay Wife $80,000.00 in the settlement agreement "[b]ecause of the difference in the amount of the assets of [Wife] and [Husband], particularly in retirement assets." The motion further alleged that

---

[1] A transcript of the January 7, 2016 hearing is not included the record on appeal. Our recitation of Husband's testimony is based on the trial court's January 11, 2016 order.

after January 11, 2016, he retained an investigator and discovered that Wife did not disclose all assets prior to the mediation, particularly her military pension. Husband alleged that Wife only applied for this pension after the divorce, and this amount was not included in the settlement. As a result, Husband alleged that "the parties did not reach a fair and equitable division of the marital property" and sought to set aside the $80,000.00 judgment against him. Attached to Husband's sworn motion are two letters, dated July 29, 2015, and September 29, 2015, from Wife's counsel to Husband's counsel disclosing her assets. Neither letter mentions Wife's military pension.

On April 22, 2016, Wife filed an answer essentially denying all material allegations relating to fraud. On the same day, Wife also filed a motion for contempt[2] and other relief, asserting, *inter alia*, Husband "continues to pay exorbitant sums to attorneys and investigators in a frivolous effort to delay payment to [Wife]" in violation of a court order. Wife also asserted that it was "impossible that [Husband] was unaware that [Wife] would receive a military pension because the parties met in the military reserves and did not retire until they reached their [twenty] year pension entitlements." As a result, Wife asked that Husband be found in contempt and ordered to pay her attorney's fees. Attached to Wife's motion is her counsel's affidavit, asserting that he and Husband's then-attorney "discussed the parties' military pensions" and "agreed that the pensions would roughly offset one another." As a result, counsel contended that the pensions were not used in calculating the division of marital assets. On May 4, 2016, Husband filed a response to Wife's motion for contempt and other relief. Therein, Husband "admit[ted] that the attorneys might have discussed the matter of the military pensions" but that "the matter was never discussed with him."

After a May 5, 2016 hearing on the outstanding motions, the trial court entered the following order on May 9, 2016:

> Upon arguments of counsel, the pleadings, and the record as a whole, the [trial court] finds that the manner in which the parties' military pensions were calculated in determining the division of marital property is not a proper basis upon which to grant relief to [Husband]. The [trial court] finds that [Husband] is only before the [trial court] in a further attempt to stall payment of the $80,000.00 that he was ordered to pay.
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that the $80,055.00 held by the [trial court] shall be released to [Wife] by check made payable to [Wife] and her attorney, to satisfy the judgment against [Husband] and that [Husband] is required to pay [Wife's] attorney's fees, totaling $1800.00, incident to the motions heard on May 5, 2016.

---

[2] The motion is unclear as to whether Wife was seeking civil or criminal contempt, as discussed *infra*.

- 3 -

[Husband] shall pay the $1800.00 into the Chancery Clerk within ten (10) days of the entry of this Order.

This appeal followed.

## ISSUES

Husband raises the following issues for our review, which we have slightly restated:

1.      Did the trial court err in denying Husband's motion for relief from judgment pursuant to Rule 60 of the Tennessee Rules of Civil Procedure based on an incorrect valuation of the pensions that were marital property?
2.      Did the trial court err in granting Wife's motion for sanctions against Husband and awarding the Wife's attorney fees against Husband?

Wife, additionally, raises the following issue:

3.      Whether Wife is entitled to damages for a frivolous appeal?

## DISCUSSION

We begin first with Husband's contention that the trial court erred in denying him relief pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. Rule 60.02 provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: . . . (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

Our Supreme Court has discussed the standard applicable to a Rule 60.02 motion challenging a trial court's final judgment:

> Tennessee law is clear that the disposition of motions under Rule 60.02 is best left to the discretion of the trial judge. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991); *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). The standard of review on appeal is whether the trial court abused its discretion in granting or denying relief. This deferential standard "reflects an awareness that the decision being reviewed involved a choice among

- 4 -

several acceptable alternatives," and thus "envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Lee Med*[*.*]*, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case "on a clearly erroneous assessment of the evidence." *Id.* The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Indeed, when reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999); *see also* *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005).

*Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). In addition:

[W]e have characterized relief under Rule 60.02 as an "exceptional remedy," *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992), "designed to strike a proper balance between the competing principles of finality and justice," *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 provides an "escape valve," *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990), that "should not be easily opened." *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991). We have reversed relief granted under Rule 60.02 where the judgment was "not oppressive or onerous." *Killion v. Tenn. Dep't of Human Servs.*, 845 S.W.2d 212, 214 (Tenn. 1992). "[R]elief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome." *Henderson*, 318 S.W.3d at 336.

A party seeking relief under Rule 60.02 must substantiate the request with clear and convincing evidence. *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.'" *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn. 2005)). In general, "the bar for

attaining relief is set very high and the burden borne by the movant is heavy." **Johnson v. Johnson**, 37 S.W.3d 892, 895 n.2 (Tenn. 2001).

**Furlough v. Spherion Atl. Workforce, LLC**, 397 S.W.3d 114, 127–28 (Tenn. 2013) (alteration in original).

In his motion in the trial court, Husband relied on Rule 60.02(2)—fraud, misrepresentation, and misconduct—to support his request for relief. The quanta of proof required to show fraud, misrepresentation, or other conduct sufficient to warrant relief pursuant to Rule 60.02(2), as stated above, is "clear and convincing[.]" **Duncan v. Duncan**, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (quoting **Leeson v. Chernau**, 734 S.W.2d 634, 638 (Tenn. Ct. App. 1987)).

Husband argues that Wife in this case withheld information regarding her military pension prior to the party's mediation; as a result "the values of the pensions were not calculated properly in the property settlement." In contrast, Wife asserts that the parties' attorneys previously discussed the military pensions and agreed not to include the pensions in any asset calculation.

The trial court, while denying Husband's motion, gave no explanation for its decision nor squarely addressed the allegations in his Rule 60.02 motion. We concede that the express language of Rule 60.02 places no affirmative duty on the trial court to make findings of fact or conclusions of law in disposing of a Rule 60.02 motion. However, this Court has previously indicated that, with respect to a Rule 60.02 motion, we are "unable to adequately review" a trial court's discretionary decision and provide the appropriate amount of deference to that decision when the trial court fails to make appropriate findings of fact and conclusions of law. **Spigner v. Spigner**, No. E2013-02696-COA-R3-CV, 2014 WL 6882280, at *6 (Tenn. Ct. App. Dec. 8, 2014) (quoting **Rogin v. Rogin**, No. W2012-01983-COA-R3-CV, 2013 WL 3486955, at *7 (Tenn. Ct. App. 2013)). Accordingly, while we will go on to consider whether Husband met his burden in this case, we note that the better method of disposing of a Rule 60.02 motion is to include appropriate findings of fact and conclusions of law so that the decision may be given the appropriate deference.

At the outset, we note that our review is severely hampered by the limited evidence contained in the record. The record on appeal does not contain any transcripts or Statements of Evidence from any of the multiple hearings that took place in this case. Instead, the "evidence" in the record before us contains only: (1) Husband's sworn motion asserting that Wife failed to disclose her military pension; (2) Wife's counsel's affidavit asserting that he discussed with Husband's then-attorney the parties' pensions, and both attorneys agreed the pensions should not be included in any calculation; and (3) Husband's concession that the attorneys "might have discussed" the pensions but that he

himself was not aware of this discussion in his answer to Wife's motion for contempt and other relief.

From our review of the record, we conclude that Husband failed to meet his burden to prove, by clear and convincing evidence, that he was harmed by "an intentional contrivance . . . to keep [him] and the Court in ignorance of the real facts touching the matters in litigation." *Duncan*, 789 S.W.2d 563 (quoting *Leeson*, 734 S .W.2d at 638). Husband has presented no evidence supporting his allegation that the parties' pensions had never been discussed. In light of Wife's attorney's uncontroverted affidavit asserting that the issue of the parties' pensions had been previously disclosed and discussed, Husband's sworn statement that *he himself* was not aware of her pension is unavailing. Indeed, Husband does not deny that his then-attorney might have had knowledge of Wife's military pension. Even assuming arguendo that the then-attorney never imparted his knowledge of Wife's pension to Husband, a "person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney has not actually communicated his knowledge to the client is immaterial." *Smith v. Petkoff*, 919 S.W.2d 595, 597–98 (Tenn. Ct. App. 1995) (quoting 7A C.J.S. *Attorney and Client* § 182 (1980)). "Once it has been established that the attorney obtained the relevant knowledge during the course of representing the client, 'the constructive notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired.'" *Boote v. Shivers*, 198 S.W.3d 732, 742 (Tenn. Ct. App. 2005) (*Smith*, 919 S.W.2d at 597–98). Based on the scant evidence in the record, we conclude that Husband has not met his burden to prove clearly and convincingly the existence of any fraud in this case to warrant reversal of the trial court's adjudication of this issue. Accordingly, we affirm the trial court's denial of Husband's Rule 60.02 motion.

We next address whether the trial court erred in awarding Wife attorney's fees in the proceedings below. Under Tennessee law, courts follow the "American Rule," which generally provides that litigants must pay their own attorney's fees unless a party can demonstrate the existence of a specific contractual agreement or statutory basis to support an award of attorney's fees. *House v. Estate of Edmondson*, 245 S.W.3d 372, 377 (Tenn. 2008) (citing *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998)). From our review of the record, neither the MDA nor the mediated agreement contains any provision providing for attorney's fees. We will therefore proceed to determine whether a statutory basis exists to support the award of attorney's fees to Wife in this case.

As is relevant to this appeal, one statutory basis for the award of attorney's fees is contained in Tennessee Code Annotated section 29-9-102, allowing Tennessee courts "to punish for acts of contempt." *Reed v. Hamilton*, 39 S.W.3d 115, 117 (Tenn. Ct. App. 2000); *see Black v. Blount*, 938 S.W.2d 394, 397–98 (Tenn. 1996) (stating that Tennessee Code Annotated section 29-9-102 was enacted to "limit and define the conduct

punishable by contempt" in order to curb potential abuses). "A contempt [finding] may be either civil in nature or criminal in nature." **Reed**, 39 S.W.3d at 118. Civil contempt proceedings are remedial in nature and are brought by private parties to enforce their rights under an order that has been violated, whereas criminal contempt proceedings are designed to "vindicate the court's authority and maintain the integrity of its orders and thus is generally punitive rather than remedial in nature." **Id.** Among the conduct that Tennessee courts have the authority to punish as contempt is "[t]he willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3). "Thus, to find contempt under this statute, a court must find the misbehavior, disobedience, resistance, or interference to be wilful." **Ahern v. Ahern**, 15 S.W.3d 73, 79 (Tenn. 2000). "[A] trial court's use of its contempt power is discretionary[.]" **Outdoor Mgmt., LLC v. Thomas**, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (citing **Robinson v. Air Draulics Eng'g Co.**, 214 Tenn. 30, 377 S.W.2d 908, 912 (Tenn. 1964)). As a result, this Court "will review a trial court's contempt citation using the abuse of discretion standard." **Id.** (citing **Powell v. Powell**, 124 S.W.3d 100, 108 (Tenn. Ct. App. 2003)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting **State v. Shirley**, 6 S.W.3d 243, 247 (Tenn. 1999)). "Furthermore, the award of attorneys' fees based upon a finding of contempt is also reviewed under the less stringent abuse of discretion standard and we will not modify a punishment imposed for contempt unless the complaining party can show that the trial court abused its discretion." **Outdoor Mgmt., LLC**, 249 S.W.3d at 377 (citations omitted).

Not all contempt findings, however, allow the trial court to award attorney's fees. Specifically, we have held that a trial court may not award attorney's fees in the context of a criminal contempt proceeding. *See Watts v. Watts*, No. M2015-01216-COA-R3-CV, 2016 WL 3346547, at *11 (Tenn. Ct. App. June 8, 2016) ("[A]ttorney's fees are not within the statutory limits to criminal contempt under Tenn[essee] Code Ann[otated section] 29-9-103."). On the other hand, the trial court is authorized in civil contempt proceedings to award attorney's fees upon a finding of contempt. *See Reed*, 39 S.W.3d at 119 (construing the "payment of damages" provision under Tennessee Code Annotated section 29-9-105 to mean that attorney's fees are allowed in civil contempt proceedings).

Here, it is not clear from the record whether civil contempt or criminal contempt was pursued in the court below. In the event that criminal contempt was at issue, the trial court is not permitted to award Wife attorney's fees in the criminal contempt proceeding. *See Watts*, 2016 WL 3346547, at *11. Even assuming that civil contempt was at issue, *see Reed*, 39 S.W.3d at 119, the record is utterly devoid of any order actually finding Husband's conduct to be willful or finding him in contempt, nor is there any indication in the record that an evidentiary hearing was ever held on Wife's contempt petition. Indeed, the trial court's exiguous order contains only the following finding, in relevant part:

"[The trial court] finds that [Husband] is only before the Court in a further attempt to stall payment of the $80,000.00 that he was ordered to pay." As previously discussed, however, where the trial court fails to make appropriate findings of fact and conclusions of law, we are "unable to adequately review" a trial court's decision and provide the appropriate amount of deference to that decision. *Spigner*, 2014 WL 6882280, at *6. In the absence of both an evidentiary hearing on Wife's contempt petition and specific findings supporting the award of attorney's fees, we reverse this portion of the trial court's judgment.

Finally, Wife seeks an award for damages on appeal. The decision to award damages based on the filing of a frivolous appeal rests solely in the discretion of this Court. *Whalum v. Marshall*, 224 S.W.3d 169, 180 (Tenn. Ct. App. 2006). "Imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare." *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010). An appeal is frivolous when it has "no reasonable chance of success," *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999), or is "so utterly devoid of merit as to justify the imposition of a penalty." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.3d 202, 205 (Tenn. 1978). Because Husband prevailed on at least one issue on appeal, we decline to award Wife any damages in this appeal.

## CONCLUSION

For the forgoing reasons, the judgment of the Tipton County Chancery Court is affirmed with respect to its denial of Husband's Rule 60.02 motion based on fraud and misrepresentation and reversed with respect to its award of attorney's fees to Wife. We further deny Wife's request for damages on appeal. Costs of this appeal are taxed one-half to Gerald Parimore, and his surety, and one-half to Linda Parimore, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE